UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

AMERISURE MUTUAL INSURANCE
COMPANY and AMERISURE
INSURANCE COMPANY,

      Plaintiffs,

v.

Case No:   2:12-cv-443-FtM-29CM

CRUM & FORSTER SPECIALTY
INSURANCE COMPANY and
EVANSTON INSURANCE
COMPANY,

      Defendants.

## ORDER

Before the Court is Plaintiffs Amerisure Insurance Company's and Amerisure Mutual Insurance Company's (collectively "Amerisure") Motion to Compel Discovery and Memorandum of Law (Doc. 90, "Motion to Compel") filed on January 28, 2014. Defendant Crum & Forster Specialty Insurance Company ("C&F") filed its Opposition (Doc. 93) on February 14, 2014.   For the reasons stated herein, the Motion is granted.

    I.    **Background and this Court's Previous Order**

On September 24, 2013, Amerisure filed a First Amended Complaint for Declaratory Judgment and Equitable Relief (Doc. 55) seeking a declaration regarding Defendants C&F and Evanston Insurance Company's alleged failure to fulfill their contractual obligations to defend or indemnify their additional insured, Legends at St. Johns, LLC ("Legends"), against liabilities arising out of claims for defective construction and related issues, which resulted in a lawsuit in St. Johns County,

Florida ("underlying lawsuit"). ContraVest Construction Group, Inc. ("ContraVest") acted as a general contractor, and Legends was the developer of the project.

The underlying lawsuit has been settled, and Amerisure, in addition to defending Legends throughout its pendency, paid all settlement amounts on behalf of Legends. Count I of Amerisure's Amended Complaint seeks a declaration that: (1) Legends qualified as an additional insured under a commercial general liability policy issued by C&F to ContraVest, and (2) that C&F had an independent contractual obligation to provide a complete defense to Legends with respect to the underlying action. Doc. 55 at 15-16. Count II asserts that Amerisure is entitled to equitable contribution from C&F for costs incurred in the defense of Legends in the underlying lawsuit. *Id.* at 17-19.

The issue presented is whether certain documents listed on C&F's supplemental privilege log must be produced. On April 1, 2013, Amerisure served its First Request for Production on C&F. Among other things, Amerisure made the following request:

> **Request 2:** Provide all documents included within or comprising the Legends' claim file in connection with Legends' claim for coverage relating to the Underlying Suit, including but not limited to any coverage determinations, evaluations and analyses with respect to the Crum Policy, Crum's participation in the Legends' settlement and Crum's decision not to pay for or reimburse any amounts associated with Legends defense in the Underlying Suit.

Doc. 90 at 6. C&F objected on the basis of attorney-client privilege and work product doctrine, as well as relevancy, and submitted a privilege log.

On October 2, 2013, Amerisure filed its first motion to compel (Doc. 65), requesting, in relevant part, an Order compelling C&F to fully respond to Amerisure's Request for Production No. 2 ("Legends claim file") by producing those documents identified on C&F's privilege log that are dated November 19, 2010, through November 2, 2011. On January 7, 2014, this Court found the documents were relevant, but that the Court was unable to determine whether the documents that C&F refused to produce were in fact protected by the attorney-client privilege and/or work product doctrine. Doc. 87. Thus, the Court denied the motion without prejudice and ordered C&F to provide support for both attorney-client privilege and work product by January 21, 2014, and move to compel by January 28, 2014 if the parties could not agree following a meet and confer. *Id.* at 10-14.

On January 21, 2014, C&F submitted to Amerisure a supplemental privilege log (Doc. 90-1) and an Affidavit in support from Carolyn Luken, claims administrator for C&F ("Luken Affidavit"). Doc. 90-2. C&F did not make any substantive edits to its privilege log. *Compare* Doc. 56-4 *with* Doc. 90-2. In addition, C&F voluntarily produced two "Progress Notes" from the Legends claim file which were previously designated as work product because they were mistakenly withheld. Amerisure then filed the instant Motion to Compel Request for Production No. 2 with respect to documents 2-5 and 8-20 on C&F's supplemental privilege log.[1]

---

[1] It is unclear from Amerisure's Motion to Compel whether it is moving to compel the production of document 2 in the privilege log. Amerisure states that it has copied the "relevant portions" of the privilege log on page 9, and documents 3-5 and 8-20 are listed there. On page 12 it states that "Amerisure requests that the Court order production of all Progress Notes currently withheld (Exhibit B, Document Nos. 3-5, 8-20)." Doc. 90. The wherefore clause of Plaintiff's Motion, however, states that Amerisure moves to compel production of

### III.   Analysis

#### A.   Waiver

Amerisure first argues that C&F has waived the attorney-client and work product privileges because it voluntarily produced two work product documents from the Legends claim file that were listed on its supplemental privilege log (documents 6 and 7, "Progress Notes").  In support, Amerisure states that the Progress Notes that were produced include the heading: "Contains Attorney Client Privileged Communications & Attorney Work Product."  Doc. 90-3 at 20-22.  C&F responds that documents 6 and 7 contain claim status facts, which are not the type of materials protected by the work product doctrine; therefore, upon discovering this, C&F produced them.  C&F states that the remaining Progress Notes listed on its supplemental privilege log are either attorney-client or work product and because it produced two Progress Notes does not mean that all documents designated as work product are not protected.

The Court agrees with Defendant.  Regardless of the label in the header or legend, the production of two documents that do not constitute work product does not waive any work product protection as to other documents.

#### B.   Work Product Doctrine

C&F is withholding documents 2 and 8-20 on the grounds that the documents are protected by the work product doctrine.  Amerisure argues that the Luken

---

Document Nos. 2-5, 8-20.  Thus, the Court will analyze document 2.

Affidavit is insufficient and C&F still does not provide a reasonable explanation why the documents are allegedly protected.

The work product doctrine is governed by federal law in diversity cases. *Cutrale Citrus Juices USA, Inc. v. Zurich Am. Ins. Group*, 2004 WL 5215191, at *2 (M.D. Fla. Sept. 10, 2004) (citing *Hickman v. Taylor*, 329 U.S. 495, 512 (1947), *Auto Owners Ins. Co. v. Totaltape, Inc.*, 135 F.R.D. 199, 201 (M.D. Fla. 1990)). The work product doctrine protects from disclosure "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A); *Auto Owners*, 135 F.R.D. at 201. However, a party may be entitled to such documents if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). The party asserting protection bears the burden of proving that the documents are work product. *Palmer v. Westfield Ins. Co.*, 2006 WL 2612168, at *3 (M.D. Fla. June 30, 2006).

Documents constituting part of a factual inquiry into or evaluation of a claim in order to arrive at a claim decision are generated in the ordinary course of business and are not considered work product. *Cutrale*, 2004 WL 5215191, at *2. Accordingly, in an insurance-coverage dispute, the date insurance coverage is denied is generally the boundary between documents that are generated under the work product doctrine and those discoverable as produced in the ordinary course of

business.  *Id.*; *United States Fidelity & Guaranty Co. v. Liberty Surplus Ins. Corp.*, 630 F. Supp. 2d 1332, 1337 (M.D. Fla. 2007).   This is not, however, a bright-line test because "[t]he mere possibility that a certain event might lead to future litigation does not render privileged all documents prepared subsequent to that event." *United States Fidelity*, 630 F. Supp. 2d at 1337.   For example, documents prepared during the time period when the company was defending a claim under a reservation of rights have been found presumptively prepared in the ordinary course of business and not protected as work product.  *Id.*  The "determinative question" is whether litigation was the primary motivating factor behind the creation of the document. *Id.*

Here, the point of contention between the parties is the date which C&F anticipated litigation.   It is undisputed that C&F never issued a formal denial with respect to the Legends' claim for coverage as an additional insured under the C&F insurance policy.   Rather, on December 1, 2010, C&F issued a reservations of rights letter to Legends, informing it that a defense would be provided to it under the Contravest policy upon satisfaction of the policy's self-insured retention ("SIR"). Doc. 55-25.  In that letter, C&F stated that it would participate in the defense of Legends upon receipt of proof that the SIR had been exhausted, subject to the reservations of rights set forth in the letter.   *Id.* at 18.

On January 28, 2011, C&F received a letter from counsel for Legends representing that Contravest had long since satisfied the SIR and that Legends was currently being defended by Amerisure, whose obligations were secondary to C&F.

Doc. 93 at 3.  C&F argues that January 28, 2011 should be the cutoff date because it was the first date C&F anticipated litigation with Legends or Amerisure.  Doc. 93 at 3-4.  According to C&F, up until this January 28, 2011 letter, C&F had no knowledge that Amerisure was defending Legends, and the letter was a veiled threat on behalf of Amerisure that a failure by C&F to participate in Legends' defense would result in litigation by Amerisure.  C&F also offers September 15, 2011, as an alternative date when it anticipated litigation.  Doc. 93 at 4.  On this date, C&F asserts that during mediation in the underlying lawsuit, Amerisure demanded that C&F reimburse it for approximately $500,000 in fees and costs Amerisure as a mutual insured had incurred in the defense of Legends.  *Id.* (citing Luken Aff. at ¶ 11).

On August 9, 2011, Legends provided C&F with a ledger documenting payments Legends made for legal services to show that the SIR had been satisfied.  Doc. 55-27.  On October 12, 2011, C&F send a letter to Amerisure, with a carbon copy to Legends' defense counsel, claiming that C&F and Amerisure were co-primary insurers for Legends and that, despite recognizing Legends as an insured under its policy and acknowledging its duty to defend, C&F would neither provide a defense to Legends nor reimburse Amerisure any amounts spent in defending Legends based on C&F's reading of Florida law.  Doc. 55-29.  On October 27, 2011, Amerisure urged C&F to reconsider its position, requested reimbursement for its past fees, and sought to coordinate Legends' defense.  Doc. 55-30.  On November 2, 2011, C&F informed Amerisure that it stood by its position.  Doc. 55-31.  Amerisure argues that up until November 2, 2011 – when C&F informed Amerisure that it would not pay defense

amounts incurred for Legends' defense or reimburse Amerisure – C&F could not have had a reasonable expectation of litigation.   Doc. 90 at 13.

The Court finds that November 2, 2011 is the date when the parties to this lawsuit reached an impasse as to their status and obligations under the insurance policies at issue.   Prior to this date, C&F had issued a reservation of rights letter and although it was corresponding through its attorneys prior to this date, counsel was stating the position of C&F under the terms of the policies and whether or not a defense and reimbursement would be provided under those terms.   Litigation was not the primary motivating factor behind the creation of the documents.   *United States Fidelity*, 630 F. Supp. 2d at 1337.   Thus, all documents identified on the supplemental privilege log (Doc. 90-2) as work product only must be produced because all such documents are dated prior to November 2, 2011.[2]

### C.   Attorney-Client Privilege

C&F is withholding documents 2-5, 9-10, and 12-19 on the grounds that the documents are protected by the attorney-client privilege.   Amerisure argues that the documents requested were prepared in the ordinary course of business as part of a factual investigation and claim evaluation process of the Legends claim file and are not protected by the attorney-client privilege.

---

[2] Work product is the only basis for privilege listed for documents 8, 11, and 20.   All other documents designated work product are also designated attorney-client privilege.

Florida law governs the application of the attorney-client privilege in diversity actions such as this that raise no federal question. *Palmer*, 2006 WL 2612168, at *2. The attorney-client privilege protects communications between a client and attorney made in confidence for the purpose of securing legal advice or assistance. *S.E.C. v. Dowdell*, 2006 WL 3876294, at *3 (M.D. Fla. May 15, 2006) (citing *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1414 (11th Cir. 1994)). Thus, to the extent that an attorney acts as a claims adjuster or claims processor and not as a legal advisor, the attorney-client privilege does not apply. *Cutrale*, 2004 WL 5215191, at *3. The party asserting the claim of privilege has the burden to show that the "primary purpose of the communication in question was for the purpose of obtaining legal advice, not business advice." *In re Denture Cream Prod. Liab. Litig.*, 2012 WL 5057844, at *6 (S.D. Fla. Oct. 18, 2012) (collecting cases).

In light of this, the Court has reviewed the Luken Affidavit and finds that the documents are not protected by the attorney-client privilege, as the Luken Affidavit does not provide the Court with sufficient information to determine whether the documents are in fact protected. These documents appear to involve claims handling that are dated after C&F's reservation of rights letter regarding whether the SIR had been satisfied and do not appear to concern legal advice on coverage issues. Doc. 90-2. *See United States Fidelity*, 630 F. Supp. 2d at 1339, n.3 (recognizing that a privilege log should contain a detailed, specific explanation as to why the document is privileged). Thus, all documents withheld on the supplemental privilege log (Doc. 90-2) based upon attorney-client privilege must be produced.

ACCORDINGLY, it is hereby

**ORDERED:**

1. Plaintiffs Amerisure Insurance Company and Amerisure Mutual Insurance Company's Motion to Compel Discovery and Memorandum of Law (Doc. 90) is **GRANTED**. Defendant C&F shall have up to and including **May 9, 2014** to produce the documents as set forth in this Order.

2. Plaintiffs' Motion for Leave to File a Reply Brief in Supports of Its Motion to Compel Discovery (Doc. 94) is **DENIED**.[3]

**DONE** and **ORDERED** in Fort Myers, Florida on this 29th day of April, 2014.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record

---

[3] The Court has reviewed the grounds upon which the Plaintiffs move to file a reply brief (Doc. 94) and Defendants' response (Doc. 96) and finds that a reply brief would not benefit the Court in resolution of the pending motion.