UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

AMERISURE MUTUAL INSURANCE COMPANY and AMERISURE INSURANCE COMPANY,

    Plaintiffs,

v.      Case No: 2:12-cv-443-FtM-29CM

CRUM & FORSTER SPECIALTY INSURANCE COMPANY and EVANSTON INSURANCE COMPANY,

    Defendants.

**OPINION AND ORDER**

This matter comes before the Court on Defendant Evanston Insurance Company's Motion for Judgment on the Pleadings (Doc. #61) filed on October 11, 2013. Plaintiffs filed a Response (Doc. #70) on October 25, 2013. For the reasons set forth below, the motion is granted.

**I.**

This case concerns insurance coverage for a lawsuit stemming from the development and construction of a condominium complex known as the Legends at St. John (the Complex). Plaintiffs Amerisure Mutual Insurance Company and Amerisure Insurance Company (Plaintiffs or Amerisure) have filed a six-count First Amended Complaint (Doc. #55) against Defendants Crum & Forster Specialty Insurance Company (C&F) and Evanston Insurance Company (Evanston) seeking declaratory and equitable relief for Defendants' alleged

failure to defend the lawsuit as required by contract. The underlying facts, as set forth in the First Amended Complaint, are as follows:

Legends at SJ, LLC (Legends) served as the developer of the Complex and hired Hardaway Construction Corp. (Hardaway) and ContraVest Construction Group Inc. (ContraVest) as general contractors. (Id. at ¶ 9.) Construction began in 2003 and was completed in 2007. (Id. at ¶ 13.) Legends and ContraVest obtained liability insurance to cover the construction period. Plaintiff Amerisure insured Legends and Defendants C&F and Evanston insured ContraVest. (Id. at ¶¶ 18-27.) Following completion of construction, control of the Complex passed to the Legends at St. Johns Condominium Association (the Condo Association). (Id. at ¶ 14.)

In 2009, the Condo Association filed suit against Legends, Hardaway, ContraVest, and others for damages related to the alleged defective construction of the Complex. (Id. at ¶ 15.) On May 20, 2010, Legends notified Amerisure about the lawsuit and requested that Amerisure defend the suit pursuant to the parties' insurance policies. (Id. at ¶ 28.) Amerisure expressed certain reservations, but ultimately accepted the defense of Legends. (Id. at ¶¶ 28-30.)

Legends also tendered defense requests to C&F and Evanston pursuant to their insurance policies with ContraVest. (Id. at ¶¶

31, 41.) Legends asserted that it was an "additional insured" under ContraVest's insurance policies and, therefore, C&F and Evanston were obligated to defend Legends in the lawsuit as well. (Id.) C&F and Evanston both refused. (Id. at ¶¶ 31-40.)

The lawsuit was settled in 2011, but neither C&F nor Evanston defended Legends and neither contributed any money toward the settlement. (Id. at ¶¶ 16, 40, 47.) As a result, Amerisure incurred in excess of $562,820 in defense costs and contributed $300,000 in indemnity payments—amounts which Amerisure argues should have been paid, in whole or in part, by C&F and Evanston. (Id. at ¶ 49.)

Amerisure brought the instant suit against C&F and Evanston seeking declaratory and equitable relief. In Count III[1] Amerisure seeks a declaratory judgment that Legends was an additional insured under Evanston's insurance policies with ContraVest (the Evanston Policies) and, therefore, Evanston had an independent contractual duty to defend Legends in the Condo Association lawsuit. (Id. at ¶¶ 74-86.) In Counts IV through VI, Amerisure seeks equitable subrogation and equitable contribution from Evanston for the costs and indemnity payments it incurred while defending Legends. (Id. at ¶¶ 87-146.)

---

[1] Counts I and II pertain only to C&F.

Evanston now moves for a judgment on the pleadings as to Counts III through VI. Evanston argues that the relevant contracts are clear that Legends was not an additional insured, and therefore Evanston had no obligation to insure Legends and cannot be liable to Amerisure for costs incurred defending Legends. Amerisure responds that an accurate reading of the contracts demonstrates that Legends was an additional insured entitled to a defense from Evanston. The determinative issue, therefore, is whether Legends was an additional insured under the Evanston Policies.

**II.**

Rule 12(c) of the Federal Rules of Civil Procedure provides that a party may move for judgment on the pleadings "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts. We accept all the facts in the complaint as true and view them in the light most favorable to the nonmoving party." Interline Brands, Inc. v. Chartis Specialty Ins. Co., 749 F.3d 962, 965 (11th Cir. 2014) (internal citation omitted). See also Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n, 137 F.3d 1293, 1295 (11th Cir. 1998). The pleadings considered by the court on a motion for judgment on the pleadings include the

complaint, answers, and the exhibits thereto. Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000).

### III.

Counts III through VI are each premised on Amerisure's contention that Legends is an additional insured under the Evanston Policies. Amerisure's claims against Evanston fail if Legends is not an additional insured. Both parties rely on the interaction between the Evanston Policies and other documents related to the construction of the Complex. All of the relevant documents were attached as exhibits to the First Amended Complaint and Evanston does not contest their authenticity. Because this is a diversity suit, the Court applies the law of the forum state, Florida. Interline Brands, Inc., 749 F.3d at 965.

**A.   Evanston Policies**

The Evanston Policies do not explicitly list Legends as an additional insured. Instead, the Evanston Policies provide that a person or organization is an additional insured if such a designation exists "as per written contract" or "as required by written contract." (Doc. #55-16, p. 34; Doc. #55-17, p. 36; Doc. #55-18, p. 38.)

**B.   Construction Contracts**

To satisfy this requirement of the Evanston Policies, Amerisure points to the contracts between Legends and ContraVest governing the construction of the Complex (the Construction

Contracts) (Docs. ##55-1, 55-2, 55-3, 55-5, 55-6, 55-7, 55-8). The Construction Contracts, however, do not themselves specify that Legends is (or is required to be) an additional insured.

**C.   Documents Incorporated Into Construction Contracts**

Under the concept commonly referred to as incorporation by reference, "[i]t is a generally accepted rule of contract law that, where a writing expressly refers to and sufficiently describes another document, that other document, or so much of it as is referred to, is to be interpreted as part of the writing."  <u>OBS Co., Inc. v. Pace Const. Corp.</u>, 558 So. 2d 404, 406 (Fla. 1990). Article 1 of the Construction Contracts provides that additional documents such as "general, Supplementary and other Conditions" are also considered part of the Construction Contracts.  (Doc. #55-5, p. 2.)  In turn, Article 8.1.3[2] states:

> The Supplementary and other Conditions of the Contract are those contained in the Project Manual dated <u>N/A</u>, and are as follows:
>
> Document                              Title                    Pages
>
> <u>EXHIBITS A, B, AND C</u>

---

[2] There are three different Construction Contracts, each covering different sets of buildings within the Complex.  The language cited by Amerisure appears in Article 8.1.3 of two of the Construction Contracts (Doc. #55-1; Doc. #55-5).  Identical language appears in Article 15.1.3 of the third Construction Contract (Doc. #55-7).  For the sake of simplicity, the Court will refer to the provision in question as "Article 8.1.3."

- 6 -

(Doc. #55-5, p. 6.)[3]  The parties disagree as to the interpretation of this provision.

### (a)   Exhibits A, B, And C

Both parties do agree that "EXHIBITS A, B, AND C" refer to exhibits to the Construction Contracts and are incorporated into the Construction Contracts.  (Doc. #61, p. 16; Doc. #70, p. 12.)  Though Exhibits A, B, and C contain various qualifications, clarifications, plans, specifications, reports, schedules, and other information relevant to the construction of the Complex, the exhibits do not contain any language indicating that Legends is an additional insured under the Evanston Policies.

### (b)   Project Manual

Amerisure contends that Article 8.1.3 of the Construction Contracts also incorporates by reference the Special Conditions

---

[3] The type-written text of the first Construction Contract lists "Exhibits A, B, C, AND D" and contains a hand-written notation striking Exhibit D.  (Doc. #55-1, p. 5.)  This makes sense because the Construction Contracts contain only Exhibits A through C.  The second Construction Contract lists only "Exhibits A, B, AND C" and has no additional notations.  (Doc. #55-5, p. 6.)  The third Construction Contract lists only "Exhibits A and B."  (Doc. #55-7, p. 13.)  Neither party argues that the handwritten notations or the slight differences among the Construction Contracts alter the ultimate determination of whether Article 8.1.3 incorporates the Project Manual by reference.  Accordingly, for the sake of simplicity and to avoid the need to specify between the type-written and hand-written provisions, the Court will analyze only the language contained in the second Construction Contract (Doc. #55-5) and apply its conclusion to the Construction Contracts as a whole.

section of the Project Manual (Doc. #55-4).[4] These Special Conditions require, among other things, that the Contractor (here ContraVest) obtain various types of insurance covering the construction of the Complex (Doc. #55-4, p. 2) and that Legends "shall be shown as co-insured under [those] insurance policies." (Id. at p. 3.)

According to Amerisure, the phrase "those contained in the Project Manual" should be read separately and distinctly from the phrase "EXHIBITS A, B, AND C." Thus, Amerisure argues that Article 8.1.3 actually incorporates by reference two sets of documents. The first set, as the parties agree, is Exhibits A, B, and C to the Construction Contracts. The second set, Amerisure insists, is any portion of the Project Manual that is properly considered a "Supplementary and other Condition." Amerisure argues that the Special Conditions section of the Project Manual—the portion requiring Legends be listed as an additional insured—qualifies as Supplementary and other Conditions in the Project Manual and, therefore, is incorporated by reference.

Evanston contends that Article 8.1.3 incorporates only the conditions in the Project Manual that the parties chose to

---

[4] The relevant excerpts from the Project Manual were attached to the First Amended Complaint. (Doc. #55-4.) The Project Manual in its entirety appears in the record as an exhibit to Evanston's motion. (Doc. #61-1.) For the purposes of this motion, the Court need only consider the excerpts attached to the First Amended Complaint.

memorialize in Exhibits A, B, and C. According to Evanston, the phrase "and are as follows: EXHIBITS A, B, AND C" means that the only Supplementary and other Conditions to the Construction Contracts are those set forth in the listed exhibits. Accordingly, whether Legends is an additional insured under the Evanston Policies—and, therefore, whether Amerisure may pursue its claims against Evanston—hinges upon whether or not Article 8.1.3 incorporates the Special Conditions section of the Project Manual in addition to the specifically-named exhibits.

As with all contracts, the interpretation of an insurance contract is a question of law to be decided by the Court. Feaz v. Wells Fargo Bank, N.A., 745 F.3d 1098, 1104 (11th Cir. 2014); Vitas Healthcare Corp. v. Evanston Ins. Co., 303 F. App'x 856, 857 (11th Cir. 2008). "Under ordinary principals of contract interpretation, a court must first examine the natural and plain meaning of a policy's language." Key v. Allstate Ins. Co., 90 F.3d 1546, 1548-49 (11th Cir. 1996). "Under Florida law, if the terms of an insurance contract are clear and unambiguous, a court must interpret the contract in accordance with its plain meaning, and, unless an ambiguity exists, a court should not resort to outside evidence or the complex rules of construction to construe the contract." Id. at 1549. "This is so because the terms of a contract provide the best evidence of the parties' intent . . . and where the language is plain a court should not create confusion

by adding hidden meanings, terms, conditions, or unexpressed intentions." Id.

"Under Florida law, a provision is ambiguous if, after resort to the ordinary rules of construction, the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage." Interline Brands, Inc., 749 F.3d at 965 (quotation omitted). "A provision is not ambiguous merely because it requires analysis to interpret it." Id. "The remedy is to construe an ambiguous provision against the insurer and in favor of coverage. But, courts may not rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." Id. (internal quotation and citation omitted).

"Moreover, in determining whether a contract is ambiguous, the words should be given their natural, ordinary meaning . . . and ambiguity does not exist simply because a contract requires interpretation or fails to define a term." Key, 90 F.3d at 1549. Further, "an interpretation which gives a reasonable meaning to all provisions of a contract is preferred to one which leaves a part useless or inexplicable." Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n, 117 F.3d 1328, 1338 (11th Cir. 1997) (quoting Premier Ins. Co. v. Adams, 632 So. 2d 1054, 1057 (Fla. 5th DCA 1994)).

The Court finds no ambiguity in Article 8.1.3 of the Construction Contract. The Court concludes that under the plain language and natural reading of the provision, Article 8.1.3 incorporates by reference only Exhibits A, B, and C to the Construction Contracts. The plain meaning of Article 8.1.3 is that the first half of the article—the phrase "[t]he Supplementary and other Conditions of the Contract are those contained in the Project Manual"—is a general description of the source of the Supplementary and other Conditions, while the second half of the article—the phrase "and are as follows: EXHIBITS A, B, AND C"—is the description of the precise documents setting forth the incorporated conditions. This is underscored by the fact that Article 8.1.3 provides space for the contracting parties to list the names and pages of the incorporated documents, but only Exhibits A, B, and C are listed and there is no mention of the Project Manual or any pages or sections therein.

In essence, Amerisure's proffered interpretation seeks to remove the words "are as follows" from Article 8.1.3 so that it instead reads "those contained in the Project Manual *and* EXHIBITS A, B, AND C." Such a reading is contrary to both the plain language of the provision and the basic tenants of contract interpretation which require the Court to interpret contracts to give meaning to each word and provision. Golden Door, 117 F.3d at 1338. Accordingly, the Court concludes that the Construction

Contracts do not incorporate by reference the portion of the Project Manual that requires Legends be named as an additional insured under the Evanston Policies.  Because Legend's status as an additional insured is a prerequisite to each of Amerisure's causes of action against Evanston (Counts III through VI), judgment will be entered in favor of Evanston on those counts.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Defendant Evanston Insurance Company's Motion for Judgment on the Pleadings (Doc. #61) is **GRANTED,** judgment shall be entered in favor of Evanston Insurance Company as to Counts III, IV, V, and VI, and Plaintiff shall take nothing.

2. The Clerk shall enter judgment accordingly and pursuant to the Court's August 1, 2014 Order (Doc. #110), terminate all pending motions and deadlines as moot, and close the file.

**DONE and ORDERED** at Fort Myers, Florida, this ___19th___ day of August, 2014.

*[Signature: John E. Steele]*
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record